IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

CANDACE MARIE FLYNN,
*Plaintiff/Appellee,*

*v.*

CHRISTOPHER CODY ALLEN FLYNN,
*Defendant/Appellant.*

No. 2 CA-CV 2023-0073
Filed January 22, 2024

---

Appeal from the Superior Court in Pinal County
No. PO202200645
The Honorable Jessica K. Dixon, Judge

**AFFIRMED**

---

COUNSEL

Coolidge Law Firm PLLC, Chandler
By Jennifer L.B. Booth
*Counsel for Defendant/Appellant*

---

**OPINION**

Judge Gard authored the opinion of the Court, in which Presiding Judge
Eppich and Chief Judge Vásquez concurred.

---

G A R D, Judge:

¶1        Christopher Flynn ("Husband") appeals from an order of protection, which the superior court granted on behalf of Candace Flynn ("Wife") and affirmed after a contested evidentiary hearing. Although the court did not enter a state-law firearms restriction or order Husband to surrender any firearms he possessed, it issued a Notice of Brady Indicator, reflecting Husband's disqualification from possessing or purchasing firearms and ammunition under federal law.[1] Husband contends the court erred by issuing this notice without first inquiring into his access to and use of firearms and finding he presented a credible threat to Wife's physical safety. For the following reasons, we affirm.

## Factual and Procedural Background

¶2        In October 2022, Wife filed a petition for an order of protection, alleging that Husband had committed several acts of domestic violence against her. Wife did not allege in her petition that Husband owned or carried a firearm, nor did she ask the court to preclude Husband from possessing firearms or ammunition during the order's duration. The superior court granted Wife's petition after an *ex parte* hearing the same day. The resulting order of protection did not prevent Husband from possessing or purchasing firearms or ammunition. However, the order's first page contained a warning to Husband: "As a result of this order, it may be unlawful for you to possess or purchase a firearm or ammunition pursuant to federal law under 18 U.S.C. § 922(g)(8). . . ." The order advised Husband to consult with an attorney should he have questions about this restriction.

¶3        The superior court thereafter conducted a contested evidentiary hearing on the order of protection, during which Husband was represented by counsel. At that hearing, there was no testimony concerning Husband's use of or access to firearms. At the hearing's conclusion, the court affirmed the order of protection as modified and issued an amended order. In that order, the court found that Husband and Wife were or had been married and that Husband had received actual notice of the hearing and had been given an opportunity to participate. The order directed that Husband have no contact with Wife and that he "shall not commit any crimes, including but not limited to harassment, stalking, or conduct involving the use, attempted use, or threatened use of physical force that would reasonably be expected to cause bodily injury, against [Wife]." Like

---

[1]"Brady," as used in this decision, refers to the federal Brady Handgun Violence Prevention Act, Pub. L. No. 103-59, 107 Stat. 1536 (1993).

the initial order, the amended order did not prohibit Husband from possessing or purchasing firearms or ammunition; although the form included a checkbox that would have restricted Husband's right to possess or purchase firearms under Arizona law and required Husband to relinquish any firearms he possessed, the court did not check that box.

**¶4** In a separate hearing order, the superior court checked several boxes that stated, "Brady applies." And it separately filed a Notice of Brady Indicator, which stated that "[u]nder the 'Brady' federal law (18 USC 922(g)(8)), [Husband] is disqualified from purchasing or possessing a firearm or ammunition for the duration of the Order of Protection." The notice also provided, "This notice is issued pursuant to 18 USC § 922(g)(8), which is not subject to Arizona statutes or court rules."

**¶5** Husband moved to modify the order of protection to remove the "Brady restrictions," arguing that the superior court had not inquired into his access to firearms and had not found that he presented a credible threat to Wife's physical safety under A.R.S. § 13-3602(G)(4). As a result, Husband maintained, the court had erred by entering the "Brady restrictions." The court denied Husband's motion, affirming its findings that the parties were intimate partners as defined by federal law and that it had continued the order of protection after a hearing of which Husband had received actual notice and in which he had been given the opportunity to participate. This appeal followed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(5)(b).

## Discussion

**¶6** Husband argues the superior court erred by issuing the Notice of Brady Indicator. Citing A.R.S. § 13-3602(G)(4) and Rule 23(i)(1), Ariz. R. Protective Order P., Husband reasons that Arizona law required the court to inquire into his access to firearms and to find that he presented a credible threat to Wife's physical safety before restricting his firearm rights in any manner. Wife, in turn, has not filed an answering brief.[2] Although we may deem the failure to file an answering brief a confession of error, *see Thompson v. Thompson*, 217 Ariz. 524, n.1 (App. 2008), we do not do so here, as we prefer to decide cases on their merits when the interests

---

[2]Wife filed a pro se document in August 2023, which we struck because it did not conform to the Arizona Rules of Civil Appellate Procedure. We granted Wife leave to refile a compliant brief, and thereafter *sua sponte* extended her time for doing so, but Wife filed nothing further.

of justice dictate, *see Bugh v. Bugh*, 125 Ariz. 190, 191 (App. 1980); *Hoffman v. Hoffman*, 4 Ariz. App. 83, 85 (1966).

¶7 We review for an abuse of discretion a superior court's decision to continue an order of protection after a contested hearing. *See Michaelson v. Garr*, 234 Ariz. 542, ¶ 5 (App. 2014). However, "[w]e review the application of Arizona and federal law to the facts *de novo*." *Mahar v. Acuna*, 230 Ariz. 530, ¶ 14 (App. 2012) (quoting *Bell v. Smitty's Super Valu, Inc.*, 183 Ariz. 66, 67 n.1 (App. 1995)). Further, when interpreting statutes or procedural rules, we "effectuate the text if it is clear and unambiguous." *Windhurst v. Ariz. Dep't of Corr.*, __ Ariz. __, ¶ 13, 536 P.3d 764, 769 (2023) (quoting *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, ¶ 9 (2018)); *see also Chronis v. Steinle*, 220 Ariz. 559, ¶ 6 (2009) ("We construe rules of court using the same principles applicable to interpretation of statutes."). We "interpret [the relevant] language in view of the entire text," and we consider the language's context and other provisions involving the same subject matter. *Windhurst*, __ Ariz. __, ¶ 13, 536 P.3d at 769 (quoting *Molera v. Hobbs*, 250 Ariz. 13, ¶ 34 (2020)).

### A. Law applicable to orders of protection

¶8 Under Arizona law, a superior court may issue an *ex parte* order of protection when it finds "reasonable cause to believe" that the defendant may commit an act of domestic violence; that the defendant has committed an act of domestic violence within the preceding year; or that the defendant has committed an act of domestic violence at an earlier date, if the court finds good cause to expand the time period beyond the previous year. § 13-3602(E); *see also* Ariz. R. Protective Order P. 23(e)(1). A court must, upon request, allow a defendant a hearing to contest an order of protection. § 13-3602(L); Ariz. R. Protective Order P. 38(a). Following that hearing, the court may either continue, modify, or quash the order. § 13-3602(L); Ariz. R. Protective Order P. 38(g)(4).

¶9 A court may restrict a defendant's ability to purchase or possess firearms as part of an order of protection but only if it finds "the defendant is a credible threat to the physical safety of the plaintiff or other specifically designated persons." § 13-3602(G)(4). Our supreme court has implemented a procedural rule to guide courts in the credible-threat assessment: "When issuing an Order of Protection, *ex parte* or after a hearing, the judicial officer must ask the plaintiff about the defendant's use of or access to firearms to determine whether the defendant poses a credible threat to the physical safety of the plaintiff or other protected persons." Ariz. R. Protective Order P. 23(i)(1). If the court finds the defendant

presents a credible threat, it may "prohibit the defendant from possessing or purchasing a firearm for the duration of the order," and, if the court enters that prohibition, it must "order the defendant to transfer any firearm owned or possessed by the defendant" to a law-enforcement agency. § 13-3602(G)(4); *see also* Ariz. R. Protective Order P. 23(i)(2).

¶10        Separately, some persons subject to domestic-violence orders of protection become prohibited possessors under federal law. Section 922(g)(8), a criminal statute, makes it unlawful to ship, transport, possess, or receive in interstate commerce firearms or ammunition for any person:

> (8) who is subject to a court order that—
>
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
>
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
>
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; *or*
>
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

(Emphasis added.)[3]  An order of protection thus triggers § 922(g)(8) if it contains the elements set forth in subsections (A) and (B), along with *either*

---

[3]The Supreme Court recently granted certiorari to determine whether § 922(g)(8) violates the Second Amendment. *See United States v. Rahimi*, __ U.S. __, 143 S. Ct. 2688 (2023).  Husband does not raise a Second Amendment challenge here, and *Rahimi*'s outcome does not affect this case's disposition.  Husband similarly does not argue he lacked notice that firearms restrictions were possible, nor could he reasonably have made that

a finding that the defendant is a credible threat to the plaintiff under § 922(g)(8)(C)(i) *or* the explicit prohibition identified in § 922(g)(8)(C)(ii). An individual who violates § 922(g)(8) is subject to federal prosecution and faces penalties of up to fifteen years' imprisonment.  18 U.S.C. § 924(a)(8).

**¶11**　　　　Our supreme court has ensured statewide uniformity in orders of protection by requiring courts to use approved forms, including the Notice of Brady Indicator and the order-of-protection forms used here. *See* Ariz. R. Protective Order P. 13(a) ("All courts and parties must use only those protective order forms adopted by the Arizona Supreme Court."); Ariz. Code of Jud. Admin. § 5-207 (same); Ariz. R. Sup. Ct. Admin. Directive 2022-05 (June 27, 2022) (approving order-of-protection form used in this case); Ariz. R. Sup. Ct. Admin. Directive 2021-06 (Apr. 13, 2021) (approving Notice of Brady Indicator form used in this case).  The mandatory order-of-protection form contains language tracking § 922(g)(8)(C)(ii).  *See* Ariz. R. Sup. Ct. Admin. Directive 2022-05.  Courts may not make textual changes to the form without first obtaining approval from the director of the Administrative Office of the Courts.  *See* Ariz. R. Protective Order P. 13(a); Ariz. Code of Jud. Admin. § 5-207.

## B.  Any error was not reversible

**¶12**　　　　As a threshold matter, Husband does not challenge the order of protection itself, nor does he challenge the hearing order on which the superior court checked various boxes indicating "Brady applies."  Husband further does not argue, and could not reasonably have argued, that the amended order of protection did not satisfy all elements of § 922(g)(8):  the court issued the order after a hearing of which Husband had notice and in which he had the opportunity to—and did—participate; Husband and Wife were intimate partners; the order restrains Husband from stalking or harassing Wife; and the order contains the explicit language set forth in § 922(g)(8)(C)(ii).[4]  The question before us, therefore, is whether the court's

argument given the initial order of protection's warning and citation to § 922(g)(8).

　　　[4]Husband criticizes the superior court's order containing § 922(g)(8)(C)(ii)'s language, describing it as a "mandatory blanket order" required by Administrative Directive No. 2022-05.  To the extent Husband challenges our supreme court's mandatory form order, he must address his concern to that court, as neither the superior court nor this court may disregard our supreme court's rules and directives.  *See State v. Wagner*, 253 Ariz. 201, ¶ 19 (App. 2022) (lower courts bound by decisions of Arizona

failure to engage in Rule 23(i)(1)'s inquiry and to make a credible-threat finding before issuing the Notice of Brady indicator resulted in reversible error.[5] We conclude it did not. *See* Ariz. Const. art. VI, § 27 ("No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done."); *Creach v. Angulo*, 189 Ariz. 212, 214 (1997) ("To justify the reversal of a case, there must not only be error, but the error must have been prejudicial to the substantial rights of the party." (quoting *Creach v. Angulo*, 186 Ariz. 548, 550 (App. 1996))).

**¶13**        We assume without deciding that courts must engage in Rule 23(i)(1)'s inquiry as a matter of course at a contested hearing on an order of

---

Supreme Court and may not overrule, disregard, or modify them). This includes the procedural framework the supreme court has approved for protective orders, in particular the mandatory order-of-protection form containing § 922(g)(8)(C)(ii)'s explicit language and the court's procedural and administrative rules prohibiting lower courts from making textual changes to the forms without advance approval. *See* Ariz. R. Protective Order P. 13(a); Ariz. Code of Jud. Admin. § 5-207.

        [5]Although it is not material to the outcome here, Husband appears to equate the Notice of Brady Indicator to an order restricting his access to firearms. The document, however, is merely a notice advising all interested persons—including Husband himself—that the order of protection meets § 922(g)(8)'s elements, a fact that, as discussed above, Husband does not challenge. Any federal restriction on Husband's firearms rights arose by operation of federal law once he became "subject to" an order meeting § 922(g)(8)'s elements, which do not include the filing of a Notice of Brady Indicator. *See United States v. Sanchez*, 639 F.3d 1201, 1206 (9th Cir. 2011) ("A court can ensure an order triggers § 922(g)(8) by including either a finding that the person subject to the court order represented a credible threat to the physical safety of an intimate partner or child or specific terms prohibiting the use, attempted use, or threatened use of physical force."); *see also United States v. Sholley-Gonzalez*, 996 F.3d 887, 896 (8th Cir. 2021) (concluding that defendant "need not have known that he was barred from possessing firearms or ammunition" to be convicted of violating § 922(g)(8) but need only be aware that he was "subject to a qualifying court order"); *United States v. Reddick*, 203 F.3d 767, 768-71 (10th Cir. 2000) (rejecting argument that conviction under § 922(g)(8) violated due process because state court entering order of protection did not notify defendant of federal firearms law).

protection, as Husband proposes. *See* Ariz. R. Protective Order P. 23(i)(1) (stating that judicial officer "must ask the plaintiff" about defendant's use of or access to firearms "[w]hen issuing" an order of protection).[6] But Rule 23(i) explains that the reason for conducting an inquiry into a defendant's firearms use and access is to "determine whether the defendant poses a credible threat to the physical safety of the plaintiff." And while a credible-threat finding is always required for a state-law firearms restriction, *see* § 13-3602(G)(4), the same is not true of a federal restriction. As discussed above, a credible-threat finding is sufficient to trigger federal firearms restrictions under § 922(g)(8)(C)(i) but is not necessary when the order of protection explicitly prohibits a defendant's "use, attempted use, or threatened use of physical force against [an] intimate partner . . . that would reasonably be expected to cause bodily injury," consistent with § 922(g)(8)(C)(ii).

¶14 Here, because the superior court's order contained § 922(g)(8)(C)(ii)'s language, the federal statute did not require a separate credible-threat finding. The order satisfied all of § 922(c)(8)'s elements and no result of Rule 23(i)(1)'s inquiry would have changed this circumstance. The superior court's failure to conduct that inquiry and to make a credible-threat finding before issuing the Notice of Brady Indicator did not result in reversible error.

¶15 *Mahar* and *Savord v. Morton*, 235 Ariz. 256 (App. 2014), on which Husband relies, do not change our analysis. In *Mahar*, as here, the superior court issued a Notice of Brady Indicator but did not restrict the defendant's ability to purchase or possess firearms under state law. 230 Ariz. 530, ¶¶ 8-10. Unlike here, however, the order of protection in *Mahar* did not contain an explicit prohibition against "the use, attempted use, or threatened use of physical force against [an] intimate partner . . . that would reasonably be expected to cause bodily injury." *Id.* ¶ 16; *see* § 922(g)(8)(C)(ii). The superior court had failed to conduct an inquiry into

---

[6]We further assume without deciding that the inquiry about Husband's firearms access in the form petition for an order of protection Wife completed was insufficient to satisfy Rule 23(i)(1)'s requirement that the court "ask the plaintiff" about the defendant's firearms use and access "[w]hen issuing" an order of protection. In addition, we note that the transcript of the *ex parte* hearing on the order of protection is not part of our record on appeal; it is thus unclear whether the superior court inquired about Husband's use of and access to firearms during that proceeding.

the defendant's use of or access to firearms, and, as a result, the record lacked evidence that would have supported a credible-threat finding—the only other way the federal law could have been triggered. *Id.* ¶¶ 15-19; *see* § 922(g)(8)(C)(i). This court therefore vacated the Notice of Brady Indicator, while leaving the remainder of the order of protection in place. *Id.* ¶ 22.

**¶16** The *Savord* court relied on *Mahar* to reach a similar conclusion. The court quashed the challenged order of protection in its entirety based on multiple errors but nonetheless addressed the Notice of Brady Indicator. 235 Ariz. 256, ¶¶ 9-24. The superior court had failed to inquire into the defendant's use of and access to firearms and had failed to make a finding that the defendant posed a credible threat to the plaintiff's safety. *Id.* ¶¶ 19-23. The *Savord* court emphasized that a "restriction against firearms does not automatically follow an order of protection," and quashed the Notice of Brady Indicator based on insufficient evidence to sustain it, combined with the court's failure to engage in the appropriate inquiry. *Id.* ¶¶ 22-23.

**¶17** *Savord* is silent as to whether the order of protection contained the language set forth in § 922(g)(8)(C)(ii). The court, citing that provision, stated that federal restrictions are triggered "only if [an] order 'includes a finding that [the] person represents a credible threat to the physical safety of [the] intimate partner or child.'" 235 Ariz. 256, ¶ 20 (first alteration added, remaining alterations in *Mahar*) (quoting *Mahar*, 230 Ariz. 530, ¶ 15). But that statement was not necessary to the case's resolution, and to the extent the order at issue there included § 922(g)(8)(C)(ii)'s language, we disagree with its interpretation of § 922(g)(8)(C) because that statute, by its plain terms, provides two alternative means of triggering federal restrictions.

**¶18** In *Mahar* and *Savord*, therefore, the superior courts erred by issuing the Notices of Brady Indicator because the underlying orders of protection did not meet § 922(g)(8)'s criteria—in other words, they were not qualifying orders under the federal statute. *Mahar* in particular establishes that a credible-threat finding is necessary to trigger federal firearms restrictions when an order of protection omits the language set forth in § 922(g)(8)(C)(ii). Here, however, the amended order of protection contained an explicit prohibition that tracked § 922(g)(8)(C)(ii), making a credible-threat finding unnecessary.

**¶19** We thus conclude that the superior court's failure to follow Rule 23(i)'s procedures and to make a credible-threat finding did not result

in reversible error. The amended order of protection satisfied all elements of § 922(g)(8) without a credible-threat finding. *See* § 922(g)(8); *see also* § 13-3602(G)(4); Ariz. R. Protective Order P. 23(i)(1). Because § 922(g)(8) was satisfied, the superior court appropriately issued the Notice of Brady Indicator.

**Disposition**

¶20          For the foregoing reasons, we affirm the order of protection.